ACCEPTED
03-15-00657-CV
7745200
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/9/2015 2:07:47 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00657-CV

**IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/9/2015 2:07:47 PM
JEFFREY D. KYLE
Clerk

**CHRIS TRAYLOR, EXECUTIVE COIMMISSIONER OF TEXAS HEALTH
AND HUMAN SERVICES COMMISSION AND THE TEXAS HEALTH
AND HUMAN SERVICES COMMISSION,
APPELLANTS**

**V.**

**DIANA D., et al
APPELLEES**

**ON APPEAL FROM THE 200TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS, HON. TIM SULAK, PRESIDING**

**APPELLEES' RESPONSE TO APPELLANTS' MOTION TO VACATE
COUNTER-SUPERSEDEAS ORDER, OR IN THE ALTERNATIVE,
INCREASE COUNTER-SUPERSEDEAS BOND**

**TO THE HONORABLE THIRD COURT OF APPEALS:**

## I.   INTRODUCTION

1)      Appellants have filed a Motion To Vacate Counter-Supersedeas Order, Or In

The Alternative Increase Counter-Supersedeas Bond ("Appellants' Motion" or "the

Motion") in which Appellants claim that the trial judge abused his discretion

because: a) the U.S. Secretary of Health and Human Services has exclusive

authority to enforce the federal Medicaid statutory provisions relating to access to care; and b) the temporary injunction violates various clauses of the U.S. and Texas Constitution. Alternatively, Appellants' Motion claims that this Court should set the bond for denial of supersedeas at $100,000,000.00 because that is the alleged two-year budget impact of the temporary injunction.

2) The Court should deny Appellants' Motion because:

    a. Appellants' attack on the trial court actions has nothing to do with their factual or legal basis.

    b. There is no federal constitutional or statutory ground to challenge the trial court's actions.

    c. The trial court's actions do not violate the Texas Constitution.

    d. None of Appellants' objections were ever presented to the trial court.

    e. Appellants expressly consented to and waived any objection to the bond for the denial of supersedeas.

    f. Appellants' claims as to the budgetary impact of the temporary injunction lack any evidentiary, or logical, basis.

Because there is no factual or legal basis for the Appellants' Motion, no error has been presented for review, and all claims in the Motion have been waived, the Court should deny the Motion.[1]

## II.  STATEMENT OF FACTS

3)    Because this is the Court's first opportunity to review any aspect of this case, Appellees offer this abbreviated statement of facts to provide context for Appellants' Motion and this response.

4)    Appellees include the next friends of five children who suffer from severe and disabling conditions, including seizure disorders, delayed development, autism, speech developmental delays, epilepsy, cerebral palsy, and other conditions. CR 5, 587–88. These children and thousands of other like them receive speech, occupational, and physical therapy services from home health agencies under the Texas Medicaid Program to assist with their disabling symptoms such as

---

[1] As Appellees were finalizing this response, Appellants filed a letter asking the Court to consider the trial court's comments at a recent hearing when making its determination of Appellants' Motion. Letter from Kristofer S. Monson, Assistant Solicitor General, to Jeffrey D. Kyle, Third Court of Appeals (Nov. 9, 2015) (on file with Court). This request is improper for at least three reasons. First, Appellants are asking the Court to consider statements made after their Motion was filed, which are not part of the Court's record. Second, Appellants have not attached the hearing transcript to their letter, apparently hoping the Court will adopt Appellants' misleading and incorrect characterization of Judge Sulak's words, which in any event did not modify the order Appellants are challenging. Third, by filing this letter the same day Appellees' response to the Motion is due, Appellants are attempting to amend their argument and avoid a response from Appellees. The Court should disregard Appellants' letter and decide the Motion based on the record and briefing schedule the Court has already defined. If the Court is inclined to consider Appellants' letter, Appellees ask that the Court instruct Appellants to include in their filing all portions of any supplemental record on which they will rely, and set a reasonable briefing schedule for any response the Court would like from Appellees.

3

the inability to speak, walk, control bodily movement, or mentally process information. CR 5, 588. Appellees also include three providers of these home health therapy services. CR 5, 588. Appellees filed this suit on August 11, 2015, to enjoin The Texas Health and Human Services Commission ("HHSC") from implementing dramatic cuts to Medicaid reimbursement rates for home health therapy services, which HHSC planned to implement on September 1. CR 4–64.

5)      Appellees' suit is based, among other things, on the fact that in promulgating its proposed rates, HHSC did not comply with its own rules, including 1 TAC §355.8021(a)(2)(B), which requires that periodic rate reviews include a study of payments for, as well as costs associated with, providing Medicaid reimbursable therapy services. CR 343, 507–08. Because HHSC failed to comply with its own rules, the proposed rates constitute an effective adoption of a new administrative rule under *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709 (Tex. 2008). CR 507–08; *see also* CR 203–05, 343–46. Appellees sought to enjoin HHSC from implementing the proposed rates because they had not followed the steps required by the Administrative Procedures Act ("APA") to adopt a new rule. *Id.* (citing TEX. GOV'T CODE ch. 2001 et seq.). Alternatively, Plaintiffs assert that Commissioner Traylor's acts were *ultra vires*, and should likewise be enjoined. *Id.* (citing TEX. CIV. PRAC. & REM. CODE §37.009; *City of El Paso v. Heinrich*, 284, S.W.3d 366, 372 (Tex. 2009)).

6)    The trial court ordered accelerated discovery, which included a deposition of Pam McDonald as the representative of HHSC. CR 98–101. During that deposition, Appellants handed Appellees a second set of proposed rates that HHSC had created over the previous weekend in response to the litigation and discovery. 2 RR 10; 3 RR 201–02. At 9:17 a.m. on the date of the initial temporary injunction hearing, Appellants filed "HHSC's Advisory to the Court" announcing that HHSC would "start over, with a new rate proposal, pursuant to Rider 50[2] and HHSC's rate methodology as prescribed by its administrative rules." CR 270–71. Because HHSC abandoned the proposed September 1, 2015 implementation of new rates, the injunction hearing was moot and did not proceed.

7)    Nine days after abandoning the first two sets of proposed rates and promising to start over, HHSC published a third set of proposed rates to take effect on October 1, 2015. CR 342, 51–73. This led Appellees to amend their petition, CR 336–92, obtain additional discovery, CR 491–94, and set another temporary injunction hearing for the week of September 21. At the hearing, HHSC's witness admitted that HHSC had not complied with the §355.8021(a)(2)(B) requirement of a study to determine the costs associated with providing the Medicaid-reimbursable services. 3 RR 229–30. The trial court found, among other things,

---

[2] "Rider 50" refers to a rider to the H.B. 1 General Appropriations budget of the 84th Legislative Session, which was introduced as Exhibit 9 at the temporary injunction hearing. 6 RR at Ex. 9 p. 2–4. Subsection (c) of Rider 50, which provides that HHSC "should" and "may" (not "shall") achieve General Revenue Funds savings, is the basis for Appellants' claim that the Legislature mandated $100,000,000.00 in rate cuts over the next two years.

that the proposed rates did not comply with the requirement of a cost study under §355.8021(a)(2)(B). CR 590–92. Because the proposed rates failed to comply with HHSC's own rules, the trial court found that the proposed rates constituted a rule change that failed to comply with Government Code Chapter 2001 et. seq. under *El Paso Hosp. Dist.*, 247 S.W.3d at 715. CR 592.

8) Contrary to the characterizations of Appellants' Motion, Rider 50 of the H.B. 1 General Appropriations Bill does not mandate $100,000,000 in cuts to Medicaid over the next two years because the relevant provisions only state that HHSC "should" and "may" (not "shall") achieve General Revenue Funds savings. 6 RR at Ex. 9, p.3–4. The trial court evidence included letters from legislators to Commissioner Traylor pointing out that this language of Rider 50 did not compel the proposed rate reductions. 6 RR at Ex. 32, App. Tab 1.

9) Appellants' Motion claims that the legal basis of the temporary injunction is a federal statutory provision of access to care. Although the trial court found that the proposed rates would result in denial of care for Medicaid recipients, CR 597, this finding was not the legal violation that formed the basis of the trial court's injunction, which was the failure to comply with HHSC's own rules and the failure to fulfill the obligations to implement new rules as required by *El Paso Hosp. Dist.*, 247 S.W.3d at 715 and Texas Government Code Chapter 2001 et. seq. CR 592. Furthermore, the trial court did not enjoin HHSC from implementing all rate

reductions because the injunction only prohibits the implementation of rates "without conducting a review of payments for providing Medicaid-reimbursable therapy services and conducting a review of costs associated with providing Medicaid-reimbursable therapy services as required by 1 TAC §355.8021(a)(2)(B). CR 595–96.

10)    At the conclusion of the temporary injunction hearing, Appellees asked the trial court to deny supersedeas under TRAP 24.2, conditioned on Appellees' posting a $500 bond. 5 RR 5–7. Appellants opposed the denial of supersedeas, but agreed that if the trial court denied supersedeas, a $500 bond is reasonable. 5 RR 9. The trial court denied supersedeas under TRAP 24.2(a)(3), and ordered that $500 of the funds Appellees had already deposited in the clerk's registry would serve as security for the denial of supersedeas. CR 596–97.

11)    Nineteen days after the trial court's temporary injunction hearing, Appellants filed a motion to modify the temporary injunction and attached an affidavit of Pam McDonald dated October 14, 2015. CR 674–89. This affidavit was not before the trial court during the temporary injunction hearing or the supersedeas hearing, which occurred on September 21–23, 2015. 3 RR 1 – 5 RR 9. Despite the fact that this affidavit was never presented to the trial court during the relevant proceedings, Appellants attached it to their Motion under Tab D and refer

7

to it as evidence in support of their claim that the trial judge abused his discretion. Appellants' Motion at 22–23.

12)   In their appeal, Appellants waived the stay of trial court proceedings. CR 735. The case remains set for trial on January 18, 2016. In their Motion, Appellants admit that the standard of review is abuse of discretion. Appellants' Motion, p. 3.

### III.   ARGUMENT

**A.   Appellants' Motion should be reserved for full panel consideration.**

13)   Appellants' Motion, if granted, would grant case-dispositive relief as measured by the impact on the lives and livelihood of Appellees and many Texans. Based on the evidence presented, the trial court found that if the proposed rates are implemented, Medicaid beneficiaries would be denied essential Medicaid-funded services and service providers would be forced out of business. CR 595. The trial court found that allowing the State to supersede the temporary injunction would render any relief granted ineffective. CR 596. The Texas Supreme Court has recognized in a similar case that the "State's position—boundless entitlement to supersede adverse non-money judgments—would vest unchecked power in the executive branch, at considerable expense to the judicial branch, not to mention the wider public we both serve." *In re State Board for Educator Certification*, 452 S.W.3d 802, 808 (Tex. 2014). In that case, the Supreme Court recognized that allowing the State to supersede the trial court's order without security would cause

8

unrecoverable loss to the prevailing party. "The State—as yet unsupported by a victory on the merits in any court—wants to strip Montalvo of his livelihood while the appellate process grinds on, and if he manages to regain his professional license after having been kicked out of his profession for years—well, bygones. That's a striking assertion of unbridled executive power—to enforce administrative orders that a trial court has reversed—and TRAP 24.2(a)(3) recognizes the judiciary's authority to say no." *Id.* at 809. Just as the State requested in *In re State Board*, HHSC asks this Court to allow them to supersede the temporary injunction, which would cause devastating setbacks to children in need of services and force many service providers out of work. Repairing the damage caused by such deprivation after the fact is impossible, and the citizens of Texas deserve the Court's protection from such "unbridled executive power." Because the outcome of Appellants' Motion would in effect permanently deprive Appellants, and many other Texans, of any relief in this case, the Court should reserve Appellants' Motion for consideration by the full panel.

**B. Appellants' Motion is actually an attack on the temporary injunction, not the denial of supersedeas.**

14) Pages 5–21 of Appellants' Motion consist of arguments that the Appellees' substantive claims are barred by federal law, the U.S. Constitution, and the Texas Constitution. This is a substantive attack on the temporary injunction mislabeled as a challenge to the denial of supersedeas because all of the arguments are directed at

9

the underlying claims and causes of action, not at the trial court's discretion to deny supersedeas under TRAP 24.2(a)(3) and *In re Board of Educator Certification*. The temporary injunction is already the subject of a pending interlocutory appeal with a schedule for briefing on the merits. The Court should disregard Appellants' arguments regarding the substantive claims because such arguments are not properly before the Court in the form of briefing on the merits of the interlocutory appeal. The Court should limit the consideration of Appellants' Motion to only those issues actually directed at the trial court's discretion to deny supersedeas. However, nowhere in Sections I, II, III or IV of the Motion is there any explanation as to how the denial of supersedeas, as distinct from the temporary injunction itself, constitutes a violation of any of the cited constitutional provisions. Accordingly, the Court should limit its consideration of the Motion to Section V, which is the only part of the Motion that actually addresses the trial judge's decision on the denial of supersedeas.

**C. The grounds for relief asserted in Appellants' Motion have nothing to do with the basis of the temporary injunction and denial of supersedeas.**

15) Appellants' Motion is premised on the argument that only the U.S. Secretary of Health and Human Services has authority to enforce the access to care provisions under the federal Medicaid statute. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015). As discussed below, Appellants' reading of

*Armstrong* is overly broad. *Infra* at §III.E. Although that case does stand for the proposition that only the Secretary may enforce §30(A) <u>of the Medicaid Act</u>, that proposition is completely irrelevant to this lawsuit because: a) this lawsuit is based exclusively on Texas law, not federal law; and b) access to care is not the basis for the trial court's temporary injunction. HHSC's own regulatory rules provide that "HHSC may conduct periodic rate reviews that include, but not be limited to, payments for <u>as well as costs associated with providing these Medicaid-reimbursable therapy, nursing, and aide services.</u>" 1 TAC §355.8021(a)(2)(B) (emphasis added). HHSC admits that it did not comply with the requirement of a cost study under this rule when it promulgated the proposed rates. 3 RR 229–30. When HHSC fails to follow its own regulatory rules in making rate decisions, such rates constitute a new rule which must comply with the APA under Texas Government Code Chapter 2001. *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709 (Tex. 2008). Because HHSC did not comply with §355.8021(a)(2)(B) and did not undertake the necessary steps for the adoption of new rules under the APA, the trial court enjoined implementation of the proposed rates because they were promulgated in violation of Texas law. CR 592–97. Nowhere in the pleadings, briefing, or temporary injunction, is there any reference to the federal statutory Medicaid right to access to care. Appellants' Motion therefore wholly ignores and completely mischaracterizes the legal basis of the

11

lawsuit and the temporary injunction in an effort to argue that the claims and the temporary injunction are preempted by federal law. Because the lawsuit and the temporary injunction are based exclusively on the violation of Texas law by HHSC, the Court should disregard Appellants' arguments regarding federal preemption.

### D. Fundamental Error under *McCauley* is irrelevant to Appellants' Motion.

16) Appellants' Motion cites to *McCauley v. Consolidated Underwriters*, 304 S.W.2d 265 (Tex. 1957) for the proposition that the temporary injunction and the denial of supersedeas are reviewable under the doctrine of fundamental error. The purpose of this argument is not clear because the temporary injunction and the denial of supersedeas are already subject to ordinary review under applicable statutes and rules of appellate procedure. However, the citation to *McCauley* is irrelevant. Fundamental error is a discredited doctrine used in rare circumstances. *McCauley* holds that when an appellate court lacks jurisdiction, the Texas Supreme Court can address the lack of jurisdiction even if the parties fail to present jurisdiction as assigned error. *Id.* at 265–67. This is merely an early recitation of what is now a common doctrine of jurisdiction. "[J]urisdiction cannot be waived or conferred by agreement, must be considered by a court sua sponte, and can be raised for the first time on appeal. *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 379 (Tex. 2006). Clearly in considering the interlocutory appeal of the

12

temporary injunction, the Court may, either by issue presented or *sua sponte*, consider whether there is jurisdiction either in the trial court or the Court of Appeals. To the extent that any doctrine of fundamental error continues, it has no bearing on Appellants' Motion. [D]ue to the policy concerns favoring preservation of error during trial or during appeal, the fundamental error doctrine is a discredited doctrine that is used in rare circumstances only." *Goodson v. Castellanos*, 214 S.W.3d 741, 750 (Tex. App.—Austin 2007, pet. denied). Appellants' Motion does not present any rare circumstance and the fundamental error doctrine is irrelevant.

**E.    There is no federal basis to challenge the trial court's actions.**

17)    The exclusive right of the U.S. Secretary of Health and Human Services (the "Secretary") to enforce §30(A) of the Medicaid Act does not preempt Texas law regarding adoption and compliance with regulatory rules. Appellants argue that *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378 (2015), preempts any challenges of any sort to a state's implementation of Medicaid. Appellants' Motion at 5. This reading of *Armstrong* is far too broad, and is contradicted not only by other Supreme Court holdings and subsequent lower court decisions interpreting *Armstrong*, but by *Armstrong* itself. In *Armstrong*, the Supreme Court held broadly that the United States Constitution's Supremacy Clause does not by itself create a federal cause of action. *Armstrong*, 135 S.Ct. at 1383. The Supreme Court went on

13

to hold that the Medicaid Act (42 U.S.C. §§ 1396 et seq.) "implicitly precludes private enforcement of §30(A)." *Id.* at 1385 (emphasis added). *Armstrong* goes no further.

18)     *Armstrong* is still very new law, but the only trial court within the Fifth Circuit that has examined it has confirmed the limit of its holding. *See Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 2015 U.S. Dist. LEXIS 146988 (M.D. La. Oct. 29, 2015). In *Kliebert*, the District Court rejected the Louisiana Department of Health and Hospitals' argument that *Armstrong* prevented the plaintiffs from bringing a cause of action under Section 1396a(a)(23)(A)of the Medicaid Act. *Id.* at \*86 ("*Armstrong* can be read as definitive as to the breadth of [§30A] but of no other section"). *Armstrong* does not even reach the entire Medicaid Act, much less beyond it. The *Kliebert* court determined this by looking at Justice Breyer's concurrence, which, as the narrowest position supporting the judgment, is the holding of the Court. *See Marks v. United States*, 430 U.S. 188, 193 (1977). Justice Breyer's concurrence discusses numerous alternative remedies available to the plaintiffs, including their right to bring an action under the federal Administrative Procedure Act. *Armstrong*, 135 S. Ct. at 1389–90 (Breyer, J., concurring in part and concurring in judgment). Accordingly, although *Armstrong* holds that private enforcement of §30A is foreclosed, it does not stand for the proposition that the Medicaid Act broadly preempts any other state or federal cause of action. Because

14

this case does not involve a challenge under §30A, or any other federal law, nothing in *Armstrong* can be construed to hold that the temporary injunction or the denial of supersedeas constitutes a violation of the U.S. Constitution or the Medicaid Act.

19) Furthermore, the Supreme Court has previously held that the Medicaid Act does not preempt state laws that do not conflict with the Act. In *Pharm. Research & Mfrs. Of Am. v. Walsh*, 123 S.Ct. 1855 (2003) a group of prescription drug manufacturers claimed that the Medicaid Act preempted a Maine statutory provision regarding Medicaid prescription drug rebates. The Court held that a party asserting Medicaid preemption bears the burden to prove that there is no Medicaid related goal or purpose served by the allegedly preempted state law. *Walsh*, 123 S.Ct. at 1868. Because there was no showing that the Maine rebate program would result in any impediment to any Medicaid recipient's access to prescription drugs, or any other impediment to any Medicaid purpose, the Maine statute was not preempted. *Walsh* 123 S.Ct. at 1870. In the case at bar, HHSC claims that the trial court's temporary injunction is somehow preempted by the exclusive remedy of the Secretary under §30A, even though the temporary injunction is not based in any way on §30A or any other Medicaid provision.

20) The actual basis for the temporary injunction is HHSC's failure to comply with the cost study requirements of 1 TAC §355.8021(a)(2)(B) and HHSC's failure

to follow the APA as required by *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008). In order to challenge the temporary injunction on the basis of Medicaid preemption, *Walsh* requires HHSC to demonstrate that §355.8021(a)(2)(B) results in an impediment to a Medicaid goal or purpose. Because HHSC has not made any attempt to do so, Appellants' Motion presents no basis to claim that the temporary injunction is preempted by the Medicaid Act.

**F.  The trial court orders do not violate any provision of the Texas Constitution.**

21)    Rider 50 does not mandate rate reductions. On page 18, Appellants' Motion claims that the temporary injunction violates the separation of powers clause of the Texas Constitution because the reductions are mandated by Rider 50. This is a mischaracterization of Rider 50, Subsection (c) of which provides: "HHSC shall reform reimbursement methodology to be in line with industry standards, …while considering stakeholder input and access to care. … $50,000,000 in General Revenue Funds savings should be achieved through rate reductions and $25,000,000 in General Revenue Funds savings may be achieved through various medical policy initiatives…" and Subsection (d) of which provides: "HHSC shall develop a plan to allocate the reductions required by Subsection (a) of this rider by taking actions such as those suggested under Subsections (b) and (c) of this rider…" 6 RR at Ex. 9, p.3. (emphasis added). The only mandate in this provision

16

is the requirement that reimbursement methodology <u>shall</u> be reformed. The language regarding rate reductions and other savings is in permissive, not mandatory language. The absence of mandatory language was pointed out to Appellants by letters from legislators which were introduced as evidence at the temporary injunction. 6 RR at Ex. 32. Because Rider 50 did not compel the proposed rate reductions, there is no basis to claim that the temporary injunction improperly interfered with any legislative or executive authority in violation of the Separation of Powers clause.

22)     <u>The temporary injunction does not prevent Appellants from adopting rates in conformity with applicable rules.</u> On pages 6–8, Appellants' Motion claims that the temporary injunction constitutes "judicial review" of HHSC's rates, which is yet another mischaracterization of the temporary injunction. The trial court found that HHSC failed to comply with state law, namely 1 TAC §355.8021(a)(2)(B) and the APA in adopting and promulgating the proposed rates and merely prohibited the implementation of rates promulgated in violation of Texas law. CR 592–96. This is not a substantive review of the rates themselves, but is merely a reflection of the unremarkable proposition that HHSC, like all other State actors, is not authorized to act in an arbitrary and capricious manner in disregard of Texas law.

23)     Furthermore, Appellants claim that the temporary injunction somehow prevents HHSC from complying with an alleged legislative mandate to implement

rate reductions. This is completely false – nothing in the temporary injunction prohibits HHSC from promulgating and adopting rates in conformity with Texas law. The temporary injunction only prohibits two things: a) implementation of the rates that were adopted and promulgated in violation of Texas law, CR 595; and b) adoption and implementation of new rates without complying with the requirements of §355.8021(a)(2)(B). CR 595–96. While the temporary injunction remains in effect, HHSC is fully permitted to implement new rates so long as the rates comply with Texas law. Therefore the temporary injunction has not prevented HHSC from adopting rates to implement the alleged mandatory budget requirements of Rider 50. It merely, and unremarkably, requires that HHSC comply with state law while doing so. Because the temporary injunction allows HHSC to promulgate and implement rates in accordance with state law, there is no violation of separation of powers or business with the United States clauses of the Texas Constitution.

24) The Texas Supreme Court has expressly approved the judicial review of reimbursement decisions made by HHSC in violation of state law. In *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709 (Tex. 2008), HHSC had ignored its own regulatory rules in changing its system of calculating Medicaid reimbursement rates. The Texas Supreme Court did not dismiss the case on the basis that the separation of powers or the business with the United States

18

clauses of the Texas Constitution prohibited the courts from reviewing HHSC's failure to comply with its own rules and the APA. The Court held that because HHSC did not comply with its own regulatory rules and did not comply with the APA to promulgate new rules, the change in reimbursement calculation was a violation of Texas law. *El Paso Hosp. Dist.* at 715. This case is no different and there is no basis to claim that the temporary injunction violates the Texas Constitution.

**G. Appellants never presented any of these arguments to the trial court, nor have they cited any record references for any briefing or evidence in support of their contentions.**

25) Appellants admit that this Court should apply an abuse of discretion standard of review to their Motion. Appellants' Motion at 3. In order to show this Court that they have preserved error as claimed in the Motion, Appellants must show that the complaint was presented to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought. TRAP 33.1(a). "As a rule, a claim, including a [federal] constitutional claim, must have been asserted in the trial court in order to be raised on appeal." *Osterberg v. Peca*, 12 S.W.3d 31, 39 n.6 (Tex. 2000). Appellants never presented any request, objection, or motion to the trial court claiming that the relief sought in this lawsuit violated the Medicaid Act, any provision of the U.S. Constitution, or any provision of the Texas Constitution. Furthermore, Appellants' Motion is wholly devoid of any

19

citations for presentation of preserved error, evidence in support of their contentions, or trial court rulings on their objections. Appellate courts are not required to search the record for support for an appellant's objections. *Fredonia State Bank v. General Am. Life Ins.*, 881 S.W.2d 279, 283 (Tex. 1994). If the appellant does not include record references, the Court may consider the point waived. *Id.* at 284. Because Appellants' Motion does not comply with TRAP 33.1(a) and fails to cite any record support, the Court should deny the Motion because all grounds have been waived.

26) The only evidence cited by Appellants' Motion is the October 14, 2015 affidavit of Pam McDonald. Appellants' Motion p. 22–23. The temporary injunction and denial of supersedeas hearings took place from September 21–23, 2015. 3 RR 1 – 5 RR 9. Clearly the Court did not consider Ms. McDonald's affidavit in entering the temporary injunction and the denial of supersedeas, because the affidavit did not even exist. Appellants cannot claim that the trial judge abused his discretion based on evidence that did not exist and was not presented prior to the ruling on the temporary injunction and denial of supersedeas, therefore the Court should disregard the affidavit of Pam McDonald and any arguments based on it.

## H. Appellants expressly consented to the bond and have not preserved any appellate review.

27)     As an alternative to vacating the denial of supersedeas, Appellants now urge the Court to "reduce the Counter-Supersedeas Bond." Appellants' Motion at 21.[3] During the hearing on the request for denial of supersedeas, Appellants expressly consented to the $500 bond. Appellants' counsel stated that Appellants' had "proffered $500," and acknowledged "that that's reasonable." 5 RR 9. This constitutes express consent to the amount of the bond. Appellants cannot contend that the trial judge abused his discretion in ordering a bond amount which Appellants agreed was reasonable.

28)     Not only did Appellants consent to the bond, they never requested the trial court to review the adequacy of the bond. An appellate court "cannot review the trial court's exercise of discretion in ordering the amount of security unless the record demonstrates that a request was presented to the trial court to determine the sufficiency of the bond and that the trial court made a ruling thereon." *Law Eng'g & Envtl. Servs. v. Slosburg Co.*, 100 S.W.3d 389, 390 (Tex. App.—Houston [1st Dist.] 2002, order) (citing *Hamilton v. Hi-Plains Truck Brokers, Inc.*, 23 S.W.3d 442, 443 (Tex. App.—Amarillo 2000, no pet.)). Without a motion in the trial court to increase the amount of the bond, the court of appeals "does not have jurisdiction

---

[3] Presumably, Appellants meant "increase." Appellees have no objection to a reduction in the bond amount.

21

to consider this matter." *Law Eng'g*, 100 S.W.3d at 390. Because the request to increase the bond was not presented to the trial court, the Court has no jurisdiction to consider the request and Appellants' Motion should be denied.

## I. There is no evidentiary or rational basis for the alleged budgetary impact of the temporary injunction.

29) Appellants have requested the Court to order a $100,000,000 bond as the alleged harm to be caused due to the supposed mandatory budget obligations that span the next two years. There is absolutely no evidence to support Appellants' claim of $100,000,000 in harm – Appellants have not cited to any documentary evidence, trial court testimony, or affidavit supporting this claim. One obvious reason for this is that no rational person could provide such testimony because it has no relation to the effect of the temporary injunction. Even if Rider 50 is a mandate — which it is not — the $100,000,000.00 would be saved over the next two fiscal years. 6 RR at Ex. 9 p. 3–4. Trial in this case is set for January 18, 2016. CR 596. At most, the Appellants' exposure is for whatever portion of the savings would be realized by that date. But more fundamentally, the only evidence relating to the impact of the rate cuts on HHSC is the testimony of Richard Allgeyer, Director of HHSC's Center for Strategic Decision Support. Mr. Allgeyer testified that "because Medicaid is an entitlement, if we run out of our appropriation, they will give us a supplemental appropriation next session. They won't like it, but they

22

will, and they almost always do because this is a lot of money." 4 RR 240. There is simply no evidentiary basis for the alleged impact of the temporary injunction.

30) Even if this Court were inclined to consider Appellants' request without the benefit of an underlying trial court order or supporting evidence, Appellants bear the burden to show that their request for a $100,000,000.00 bond is not likely to cause Appellees substantial economic harm. *Accord* TEX. CIV. PRAC. & REM. CODE §52.006(c); TEX. R. APP. P. 24.2(b) (instructing trial courts to lower amounts of security required to suspend enforcement of judgments to amounts that will not cause substantial economic harm to judgment debtors). Such a bond amount would obviously cause Appellees tremendous substantial harm. Though Appellees would be happy to offer evidence to that effect in an appropriate proceeding with the trial court, this Court can infer as much from Michael Reiswig's testimony. Mr. Reiswig is president and CEO of Care Options for Kids, 3 RR 80, whose revenue makes up approximately 9% of the home health market for pediatric therapy. 3 RR 84. He testified that an annualized loss of just $4.5 million dollars would force his company to "close the doors." 3 RR 100. Posting a $100,000,000.00 bond would certainly have the same effect.

31) Finally, Appellants cannot show that the temporary injunction has any actual impact on the HHSC budget because HHSC is not prohibited from adopting rate reductions so long as they comply with their own regulatory rules and the APA.

23

The temporary injunction permits HHSC to adopt rate reductions so long as it complies with 1 TAC §355.8021(a)(2)(B). CR 595–96. If HHSC believes it is under a legislative mandate to implement the rate reductions, all it needs to do is comply with its own regulatory rules, or adopt new rules as required by the APA, to promulgate and implement the new rates. HHSC has not made any attempt to do so, therefore the failure to implement rate reductions to achieve the alleged mandatory budget savings is due to HHSC's own inaction, not the temporary injunction.

## IV.    CONCLUSION

32)    Appellants' Motion constitutes a direct attack on the temporary injunction without even a thin disguise in the form of a motion to vacate the denial of supersedeas. The Motion wholly mischaracterizes the basis for the relief sought and the legal grounds for the temporary injunction in order to fabricate claims of federal preemption and constitutional violations out of whole cloth. Nothing in the relief requested or granted violates any federal statute or any constitutional provision. Furthermore, Appellants failed to preserve and have waived all objections in the Motion because Appellants never presented those objections to the trial court, nor is there any attempt to show preservation of error or evidentiary support through record citations. Appellants expressly consented to the bond amount and never requested the trial court to reconsider the bond, therefore there is

24

no basis for the Court to consider the request to increase the bond. Even if such request had been preserved for appellate consideration, there is absolutely no evidence to support the claimed bond amount, which is wholly divorced from any actual impact that might result from the temporary injunction. Accordingly, the Court should deny Appellants' Motion.

Respectfully submitted,

**RICHARDS RODRIGUEZ & SKEITH, LLP**
816 Congress Avenue, Suite 1200
Austin, Texas 78701
Telephone: 512-476-0005
Facsimile:  512-476-1513

By:    /s/ Daniel R. Richards_____
DANIEL R. RICHARDS
State Bar No. 00791520
drichards@rrsfirm.com
BENJAMIN H. HATHAWAY
State Bar No. 09224500
bhathaway@rrsfirm.com
CLARK RICHARDS
State Bar No. 90001613
crichards@rrsfirm.com
CHASE C. HAMILTON
State Bar No. 24059881
chamilton@rrsfirm.com

**ATTORNEYS FOR APPELLEES**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been delivered to the following counsel of records on this, the 9th day of November 2015 by electronic notification and e-mail:

Kristofer S. Monson
Assistant Solicitor General
Office of the Attorney General of Texas
P.O. Box 12548, (MC 059)
Austin, Texas 78711-2548
Kristofer.monson@texasattorneygeneral.gov

/s/ Daniel R. Richards_____
**DANIEL R. RICHARDS**

## APPENDIX

TAB 1      Letters from legislators to Commissioner Chris Traylor
(6 RR at Ex. 32)

# TAB 1

STATE of TEXAS
HOUSE of REPRESENTATIVES



GARNET F. COLEMAN
STATE REPRESENTATIVE
DISTRICT 147

RECEIVED

JUL 27 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Chris Traylor, Executive Commissioner                    July 14, 2015
Texas Health and Human Services Commission
Brown-Heatly Building
4900 N. Lamar Blvd.
Austin, TX 78751-2316

Re: HHSC proposed rate reductions for certain acute care providers in home health and outpatient settings.

Dear Commissioner Traylor,

I first want to reiterate both my enthusiasm for and congratulations on your appointment as Executive Commissioner of the Health and Human Services Commission. The agency is in great hands, and that is great news for all Texans.

I therefore write to you with the hope that you hear my strong opposition to the rate reductions that HHSC has proposed for physical, occupational, and speech therapy provided in certain home health and outpatient settings. While other states are accepting billions in federal dollars to create actual healthcare systems for their poor and working class citizens, Texas is now deciding whether to implement changes that could deny critical services to 60,000 poor and sick children.

This does not have to happen. First, **Rider 50 does not compel these reductions,** and in light of what we know now, I question whether it even allows such reductions. The language contained in the rider does not require HHSC to reduce rates by a certain amount. The rider was carefully written to use the word "should" – not "shall" – in reference to a potential dollar amount with regards to these reductions. This is no small difference, particularly when the same subsection does in fact compel – by the use of the word "shall" – HHSC to make these reimbursement reforms "while considering stakeholder input and access to care."

Exhibit _____ 10 _____
Witness _____ McDonald _____
Date _____ 9-17-15 _____
Kelly Fisher, CSR



PLAINTIFF'S
EXHIBIT
32
9-22-15 RW

HHSC00002354_00022

I therefore ask whether HHSC has in fact considered these two required factors. Access to care will certainly be cut off for tens of thousands of Texas children, many of whom have chronic but very treatable conditions. As for stakeholder input, you have not just heard from me and so many of my colleagues; you have also heard from the almost 200 people who were able to make it to HHSC's overcrowded public hearing on Monday to describe the harm these reductions would cause.

Meanwhile, I do not know of any Legislator who has written in support of these cuts. After all, what elected official would want to put their name next to a decision so harmful to Texas children? And that is exactly the problem with HHSC moving forward with the proposal. We all know that tough choices must be made, but the citizens of this state deserve to have their elected representatives make — and defend — those choices. It is not HHSC's job to make the unpopular decisions the Legislature will not, and doing so would be a disservice to you, the agency, and the people of this state.

I therefore ask that HHSC not move forward with the proposed cuts. They are unnecessary, harmful, and could even be self-defeating in terms of cost by allowing currently manageable conditions to transform into chronic, lifelong ailments.

Thank you for your good work and service to the State of Texas.

Sincerely,

Garnet F. Coleman
Texas State Representative
District 147
512.463.0524

HHSC00002354_00023

# TEXAS HOUSE OF REPRESENTATIVES



## GENE WU
### DISTRICT 137

RECEIVED

JUL 21 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

July 16, 2015

The Honorable Chris Traylor
Executive Commissioner
Texas Health and Human Services Commission
Attn: Rate Analysis, Mail Code H-400
Brown-Heatly Building
4900 North Lamar
Austin, Texas 78751

Dear Commissioner Traylor:

I am writing to express my deep concern about the proposed cuts to Medicaid reimbursement rates for physical, occupational, and speech therapy. Such cuts are projected to result in the disastrous loss of access to medically necessary services for tens of thousands of low-income children with developmental delays and special needs. I join fellow legislators in opposing these cuts, and ask that you prioritize the needs of our most vulnerable Texans by ensuring access to these services.

Medical communities widely accept that children with disabilities reach their fullest potential when they have access to early and consistent intervention. Kids who use these much needed evidence-based therapies are more likely to succeed in school and later in the workforce, which reduces their dependence on care and services later in life. It is our state's legal and ethical obligation to ensure access to care for children with special needs - and this rate cut will mean that many low-income families will no longer have access to necessary care.

Many of the clinics that provide these medically necessary services will not be able to continue to operate when these deep rate cuts go into effect. Staff at one clinic in my district which serves over 600 children told my office that they would need to shut their doors. Not only will the children they serve lose the care they need, but their 100 employees will lose their jobs. This will be the situation for clinics across Texas if HHSC authorizes this rate change. Children



CAPITOL: P.O. Box 2910 • AUSTIN, TX 78768-2910 • (512) 463-0492 • FAX: (512) 463-1182
DISTRICT: 6500 ROOKIN, BLDG. C • HOUSTON, TX 77074 • (713) 271-3900

HHSC00002354_00003

from families with means will continue to have access to the services they need, while children from low-income families will be left behind.

I do not believe that budget Rider 50 mandates these drastic cuts, especially given the effect they would have on access to care. The impact of this rate change may violate the right of children with disabilities to access medically necessary services. I urge you not to proceed with this dangerous plan. It threatens the well-being of Texas children, and is counter to our duty as a state to provide medical care for low-income kids.

Thank you for your consideration. Please do not hesitate to contact my office if you have any questions or would like to discuss this issue further.

Sincerely,

Gene Wu
State Representative
District 137

HHSC00002354_00004



# TEXAS HOUSE of REPRESENTATIVES

## Mary E. González
*State Representative, District 75*

RECEIVED

JUL 22 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

July 17, 2015

Commissioner Chris Traylor
Texas Health and Human Services Commission
Attention: Rate Analysis, Mail Code H-400
Brown-Heatly Building
4900 North Lamar
Austin, Texas 78751

Re: Proposed changes to reimbursement rates under Rider 50 of the 2016-2017 Biennium Budget

Dear Commissioner Traylor,

It has come to my attention that HHSC is currently reviewing proposed changes for the reimbursement rates as a part of fulfilling the cost reduction plans outlined in Rider 50 of the 2016-2017 budget. I want to share, in no unclear terms, my deep concern about the possibly devastating potential of the proposed rate reductions for Medicaid reimbursements.

Reducing reimbursement rates carries a significant risk for those who rely on Medicaid. When reimbursement rates fall, the impact is felt most distinctly by the patients - in this case, children and families with serious medical needs. If a Medicaid patient becomes a financial burden, physicians may have no choice but to turn them away.

According to conservative estimates, a $50 million reduction in reimbursement rates for these Texans would leave 60,000 pediatric patients without access to vital healthcare services - and this is the low end of the potential cost to public health in our state.

Further, these reimbursement rate reductions stand to impact the availability of therapy services. At a time when Texas faces shortages of trained healthcare professionals across the state, we could lose a further 7,500 therapists who would find themselves unemployed as a result of these rate reductions.

The patients who receive these services are facing birth defects, genetic disorders, and physical or cognitive disabilities. They have cerebral palsy, developmental delays, or were born preterm and require intensive medical services and care. By focusing the reimbursement reductions requested in Rider 50 on these services, we are placing the burden on the Texans who most need our support - and their families.

For me, this isn't just about policy - it is personal. My youngest sister has a developmental disability, and I have seen firsthand the importance of healthcare access to her quality of life. My family strives to support her the best way we can, but if she were ever unable to access healthcare services due to an attempt to reduce reimbursement rates, the impact would be devastating. For the tens of thousands of

P.O. Box 2910 • Austin, Texas 78768-2910 • phone (512) 463-0613 • fax (512) 463-1237 • mary.gonzalez@house.state.tx.us
District Office: 11200 Santos Sanchez Road • Socorro, Texas 79927 • phone (915) 790-2299 • fax (915) 790-2144

HHSC00002354_00008



# TEXAS HOUSE *of* REPRESENTATIVES

## Mary E. González
*State Representative, District 75*

families just like mine, who have children and brothers and sisters they love, who stand to feel the most direct impact from this rate reduction - I ask you to reject this proposal. We should be supporting these families, not asking them to carry an even greater burden.

Thank you for your consideration. If there is ever any way I can be of assistance on this issue or any future rule proposal, please feel free to contact me at any time by calling my office at (512)463-0613 or emailing me at Mary.Gonzalez@house.state.tx.us.

Sinceramente,

Mary E. González
Texas Representative
House District 75

P.O. Box 2910 · Austin, Texas 78768-2910 · phone (512) 463-0613 · fax (512) 463-1237 · mary.gonzalez@house.state.tx.us
District Office: 11200 Sanlas Sanchez Road · Socorro, Texas 79927 · phone (915) 790-2299 · fax (915) 790-2144

HHSC00002354_00009



6015 ANTOINE, SUITE E
HOUSTON, TEXAS 77091
713-683-6363

**State of Texas**
**House of Representatibes**
SYLVESTER TURNER
STATE REPRESENTATIVE

P.O. BOX 2910
AUSTIN, TEXAS 78768-2910
512-403-0584

July 20, 2015

Mr. Chris Traylor
Executive Commissioner
Texas Health and Human Services Commission
Attention: Rate Analysis, Mail Code H-400
Brown-Heatly Building
4900 North Lamar
Austin, Texas 78751

**RECEIVED**

**JUL 21 2015**

**OFFICE OF THE**
**HHS EXECUTIVE COMMISSIONER**

Dear Commissioner Traylor:

Thank you for your prompt reply to my previous inquiry regarding pediatric therapy rates.

Please allow me to direct your attention to the "access to care" reference in Rider 50. This language first appeared, and was adopted overwhelmingly, in the Texas House. The words are purposeful and carry intent.

Please provide me with a copy of all impact studies and economic analyses that have been conducted related to the specific issue of possible negative impacts of this rate decrease on access to care and provider networks. Please also forward to me any similar studies or economic analyses that have been conducted by anyone of HHSC's contracted managed-care organizations regarding this issue.

Due to the immediacy of the proposed rate decrease, please forward the requested information by July 25, 2015, so that I may carefully review the access to care data which you are basing the decisions regarding these rate reductions.

Thank you very much.

Sincerely,

Rep. Sylvester Turner
District 139, Houston, Texas

DISTRICT 139
HARRIS COUNTY
APPROPRIATIONS, VICE CHAIR * STATE AFFAIRS * LEGISLATIVE BUDGET BOARD

HHSC00002354_00001



SENATOR RODNEY ELLIS
District 13

PRESIDENT PRO TEMPORE
1999 - 2000

**The Senate of**
**The State of Texas**

COMMITTEES:

Vice-Chair, State Affairs
Business & Commerce
Transportation

July 20, 2015

Mr. Chris Traylor, Executive Commissioner
Health and Human Services Commission
4900 N. Lamar Blvd.
Austin, TX 78751-2316

**RECEIVED**

JUL 21 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Dear Commissioner Traylor,

It has come to my attention that there are proposed reductions to Medicaid reimbursements for physical, occupational, and speech therapy provided by Comprehensive Outpatient Rehabilitation Facilities/Outpatient Rehabilitation Facilities (CORF/ORF), Home Health Agencies (HHA), and Independent Therapists set to go into effect in September. Medical providers of these critical services in my district have expressed concern that these reductions could make it difficult to provide these essential services.

Reducing all Medicaid reimbursement rates for physical, occupational and speech therapy to 145 percent of the median Texas commercial reimbursement rate will have a damaging impact on access to services for medically fragile children. These rate reductions will likely decrease patient options for therapy services in my district, reduce the time frame for when services can begin, and risk provider continuity for therapy services needed by the patient.

I understand that the Health and Human Services Commission (HHSC) Rider 50 (c) in H.B. 1, 84th Legislature, Regular Session, 2015, directs HHSC to achieve at least $50 million in General Revenue savings each fiscal year through rate reductions. However, Rider 50 (c) allows HHSC to consider stakeholder input and access to care when determining the methodology to be used for reimbursement of therapy services.

I would urge you to carefully consider how these reductions will impact therapy services throughout the state before making a decision to implement reductions that could reduce access to essential therapy services.

Thank you for your consideration. Please contact my office if you need additional information or have any questions.

Sincerely,

Rodney Ellis

Lyric Centre
440 Louisiana, Suite 575
Houston, Texas 77002
(713) 236-0306
FAX: (713) 236-0604

P.O. Box 12068
Austin, Texas 78711
(512) 463-0113
FAX: (512) 463-0006
Dial 711 For Relay Calls
E-Mail: rodney.ellis@senate.state.tx.us

2440 Texas Parkway, Suite 110
Missouri City, Texas 77469
(281) 261-2360
FAX: (281) 261-4726

HHSC00002354_00002



# THE SENATE OF TEXAS
## JUAN "CHUY" HINOJOSA
### PRESIDENT PRO TEMPORE
#### DISTRICT 20

COMMITTEES
NATURAL RESOURCES &
ECONOMIC DEVELOPMENT

AGRICULTURE, WATER &
RURAL AFFAIRS

CRIMINAL JUSTICE

July 20, 2015

**RECEIVED**

**JUL 21 2015**

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Commissioner Chris Traylor
Texas Health and Human Services Commission
Brown-Heatly Building
4900 N. Lamar Boulevard
Austin, Texas 78751-2316

Dear Commissioner Traylor,

I am concerned with the proposed Medicaid payment rates that the Health and Human Services Commission has recommended for physical, occupational, and speech therapy provided by Comprehensive Outpatient Rehabilitation Facilities/Outpatient Rehabilitation Facilities (CORF/ORF), Home Health Agencies (HHA), and Independent Therapists. The proposed rate reductions are not equitable and I am concerned that a significant access to care problem will ensue should these rates be implemented.

As Vice Chair of the Senate Finance Committee, I am well aware of the legislative directive for rate reductions in Medicaid spending by the State of Texas, and that these proposed rates are intended to accomplish the goals of the General Appropriations Act, Health and Human Services Commission Rider 50 (House Bill 1, 84R). Utilizing cost containment measures to reduce our state's Medicaid burden is necessary and frequently beneficial, however, these proposed rates are a very large rate reduction in a short amount of time.

Implementing the proposed rates could result in an inadequate network of these providers in our state, and threaten the accessibility to therapy for our most vulnerable populations. Many therapy providers will not be able to absorb such a large rate cut and may no longer remain viable causing them to go out of business. This is particularly concerning in rural areas and areas with high Medicaid populations such as my Senate District in the Rio Grande Valley.

612 W. NOLANA, SUITE 410-B
McALLEN, TEXAS 78504-3089
956/972-1841 • FAX: 956/664-0602

P.O. BOX 12068
CAPITOL BUILDING
AUSTIN, TEXAS 78711
TOLL FREE: 866/259-5016
512/463-0120 • FAX: 512/463-0229
DIAL 711 FOR RELAY CALLS

www.senate.state.tx.us

2820 SOUTH PADRE ISLAND DRIVE, SUITE 291
CORPUS CHRISTI, TEXAS 78415
361/225-1200 • FAX: 361/225-0119

HHSC00002354_00005

It is critical that the HHSC rate setting process take into account the comments, suggestions, and perspectives of our Texas therapy providers, all of whom have first-hand insight of the situation and will be impacted by your decisions. The intent of the Legislature is to effectively reduce Medicaid spending, yet implement an equitable rate reduction throughout provider types and allow providers to remain viable and maintain the quality of care Texans deserve.

Thank you for your time and consideration of this matter. Should you have any questions or need additional information, please contact my office.

Sincerely,

Juan "Chuy" Hinojosa
State Senator, District 20

612 NOLANA, SUITE 410B
McALLEN, TEXAS 78504-3089
956/972-1841 • 956/664-0602 FAX

P.O. BOX 12068
CAPITOL BUILDING
AUSTIN, TEXAS 78711
TOLL FREE: 866/259-5016
512/463-0120 • FAX: 512/463-0229
DIAL 711 FOR RELAY CALLS

E-MAIL: juan.hinojosa@senate.state.tx.us

2820 SOUTH PADRE ISLAND DRIVE, SUITE 291
CORPUS CHRISTI, TEXAS 78415
361/225-1200 • FAX: 361/225-0119

HHSC00002354_00006



July 22, 2015

RECEIVED

JUL 22 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Mr. Chris Traylor
Executive Commissioner
Texas Health and Human Services Commission
ATTN: Rate Analysis, Mail Code H-400
Brown-Heatly Building
4900 North Lamar
Austin, Texas 78751

RE: *Proposed Adjusted Medicaid Payment Rate Reductions for Physical, Occupational, and Speech Therapy*

Dear Commissioner Traylor:

We write today in opposition to the rates proposed by the Health and Human Services Commission (HHSC) for physical, occupational, and speech therapy provided by Comprehensive Outpatient Rehabilitation Facilities/Outpatient Rehabilitation Facilities (CORF/ORF), Home Health Agencies (HHA), and Independent Therapists. We fear the proposed reductions will severely limit access to medically-necessary services for the most vulnerable in our state.

HHSC has identified budget Rider 50 as the driver for these rate reductions. However, when questioned about the impact this measure would have on those receiving services, Chairman John Otto of the House Committee on Appropriations made it clear that "it was not intended to take anybody off services." Yet HHSC's proposed rates would do just that— reduce providers and access to care for thousands of Texans. In communication with our offices, providers estimated that if these rate reductions are implemented statewide, 60,000 pediatric patients will lose access to care and 7,500 therapists will be unemployed.

The therapies under consideration are designed to mitigate any further physical or cognitive delays that might impact a child's well-being. Individuals to be most impacted by this proposal include children receiving services for birth defects, genetic disorders, and/or physical or cognitive disabilities. I think you would agree that, rather than subject them to additional barriers, we have a duty to safeguard these fragile young Texans.

HHSC00002354_00010

We urge you to comprehensively study the effect this level of reductions could have on access to care prior to the implementation of any cost-reduction strategy. While short-term cost containment may be possible using this methodology, the longer term cost to our state and to those most in need is potentially catastrophic.

Your time and efforts to better the State of Texas are much appreciated. If you have any questions or concerns regarding our request, please contact our offices.

Sincerely,

State Rep. Carol Alvarado
House District 145

State Rep. Rafael Anchia
House District 103

State Rep. Diego Bernal
House District 123

State Rep. Terry Canales
House District 40

State Rep. Garnet Coleman
House District 147

State Rep. Dawnna Dukes
House District 46

State Rep. Jessica Farrar
House District 148

State Rep. Ryan Guillen
House District 31

State Rep. Roland Gutierrez
House District 119

State Rep. Donna Howard
House District 48

State Rep. Celia Israel
House District 50

State Rep. Eric Johnson
House District 100

State Rep. Eddie Lucio III
House District 38

State Rep. Armando Martinez
House District 39

State Rep. Ruth Jones McClendon
House District 120

State Rep. Borris Miles
House District 146

State Rep. Ina Minjarez
House District 124

State Rep. Joe Moody
House District 78

HHSC00002354_00011

State Rep. Sergio Muñoz, Jr.
House District 36

State Rep. Elliott Naishtat
House District 49

State Rep. Ron Reynolds
House District 27

State Rep. Eddie Rodriguez
House District 51

State Rep. Justin Rodriguez
House District 125

State Rep. Ramon Romero, Jr.
House District 90

State Rep. Toni Rose
House District 110

State Rep. Chris Turner
House District 101

State Rep. Hubert Vo
House District 149

State Rep. Armando Walle
House District 140



**Texas House of Representatives**
State Representative
**Helen Giddings**
District 109

July 23, 2015

Mr. Chris Traylor, Executive Commissioner
Texas Health and Human Services Commission
Attention: Rate Analysis, Mail Code H-400
Brown-Heatley Building
4900 North Lamar
Austin, Texas 78751

**RECEIVED**

JUL 27 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

RE: *Payment rates for Physical, Occupational, and Speech Therapy provided by Comprehensive Outpatient Rehabilitation Facilities (CORF/ORF), Home Health Agencies (HHA), and Independent Therapists are proposed to be effective September 1, 2015.*

Dear Commissioner Traylor:

You recently received a letter (enclosed), signed by 28 Texas House Representatives, which opposes the rate reductions proposed by the Health and Human Services Commission (HHSC) for physical, occupational, and speech therapy provided by Comprehensive Outpatient Rehabilitation Facilities/Outpatient Rehabilitation Facilities (CORF/ORF), Home Health Agencies (HHA), and Independent Therapists.

I write you today to join my colleagues in their concern and opposition to the proposed rate reductions for these important therapies.

Thank you very much for your time and consideration of our concerns for the very vulnerable children who deserve uninterrupted access to care. Please do not hesitate to contact me directly at 512-463-0953.

Sincerely,

Helen Giddings

Committees: Appropriations • Vice Chair • State Affairs • Calendars

P.O. Box 2910
Austin, Texas 78768-2910
512-463-0953
FAX: 512-463-5887

1510 N. Hampton, Suite #340
DeSoto, Texas 75115
972-224-6795
FAX: 972-228-6796

HHSC00002354_00040



STATE OF TEXAS
HOUSE OF REPRESENTATIVES
## JAMES B. FRANK
*District 69*

July 23, 2015

RECEIVED

JUL 27 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Commissioner Chris Traylor
Texas Health and Human Services Commission
Brown-Heatly Building
4900 N. Lamar Boulevard
Austin, Texas 78751-2316

Commissioner Traylor,

I write this letter to express my thoughts and concerns regarding the proposed Medicaid payment rates for physical, occupational, and speech therapy provided by Comprehensive Outpatient Rehabilitation Facilities/Outpatient Rehabilitation Facilities, Home Health Agencies, and Independent Therapists.

Earlier this week, you heard testimony from dozens of affected families and providers of pediatric therapy regarding proposed rate cuts to pediatric therapy services. I understand that these cuts are part of the work to fulfill HHSC Rider 50 in House Bill 1. I believe that cost containment is sound policy and a fiscal necessity for the state in the Medicaid program which is a reason I supported and voted for HB 1. However, I believe that it should not and cannot be done in a manner that threatens adequate access to care for many in our state, especially in rural Texas.

I have heard from many in my district who assert that these proposed changes will dramatically and disproportionately impact rural children's access to care as there are very few agencies that have coverage in parts of House District 69.

I am also concerned at the accelerated timeline for imposing the new rates. It is entirely feasible that the reductions called for by HHSC will be implemented with less than 60 days' notice for affected providers. This simply does not allow for providers to alter their business practices sufficiently to adjust to necessary reductions.

I do not envy the job that HHSC has in attempting to find cost savings on a program as large and complex as Medicaid. However, this proposed rate reduction is not the right answer and will mean inadequate access to care for some of our most vulnerable populations.

Thank you for your consideration in this matter. If I can be of assistance on this or any other subject, please contact my office.

Sincerely,

James B. Frank

CAPITOL OFFICE: P.O. BOX 2910 • AUSTIN, TEXAS 78768-2910 • (512) 463-0534 • FAX (512) 463-8161 • JAMES.FRANK@HOUSE.STATE.TX.US
DISTRICT OFFICE: 1206 HATTON ROAD • WICHITA FALLS, TEXAS 76302

HHSC00002354_00039

Bice Chair, Agriculture, Water,
and Rural Affairs
Chair, Eagle Ford Shale
Legislative Caucus



Committees
Health and Human Services
Natural Resources
and Economic Development
State Affairs

**Judith Zaffirini**

State Senator, District 21
President Pro Tempore, 1997

July 23, 2015

Chris Traylor, Executive Director
Texas Health and Human Services Commission
4900 N. Lamar Blvd
Austin, TX 78751-2316

**RECEIVED**

JUL 27 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Dear Commissioner Traylor:

Thank you for your continued leadership to provide health and human services that support many Texas families, especially their children. This is to express my serious concerns regarding the Health and Human Services Commission's (HHSC) proposed Medicaid rate cuts to pediatric speech, occupational, and physical therapy services. Because these entitlement services are provided to children who have the highest levels of need, it is critical that the decreases do not diminish their access to care or compromise the current continuity of care and future network adequacy. Given your September 1 implementation date, I would appreciate your directing the appropriate HHSC personnel to meet with my staff and interested stakeholders and advocates immediately. It is my hope that this discussion will clarify how these rates were developed; how they will impact access to care, providers, services, and children; and whether there are any solutions and alternatives.

Public testimony heard on July 20 overwhelmingly opposed these proposed cuts. Witnesses stated that these reductions, as high as 68 percent for some services, would result in reduced access for Texans who have complex needs. They also noted that a 37 percent reduction in the reimbursement for an evaluation could prevent access to the very assessments required to receive services.

I share the concerns raised by many who testified regarding the lack of transparency throughout this process. There reportedly was no opportunity for public comment regarding the related cost containment rider during the legislative session, and the methodology used to develop these rate reductions has not been published or shared. What's more, it is unclear whether HHSC considered the impact these cuts would have on programs such as the Early Childhood Intervention program, as the agency has not released estimates regarding changes to access to care or quality of care in specific programs.

Please ask your staff to contact my health and human services legislative aide, Isabel Casas, at 512/463-0121 or isabel.casas@senate.state.tx.us, immediately to schedule this meeting as soon as possible. Thank you for your attention to this matter.

Very truly yours,

Judith Zaffirini

Capitol Office: P.O. Box 12068 • Austin, Texas 78711 • 512/463-0121 • Fax 512/475-3738 • Dial 711 For Relay Calls
District Office: P.O. Box 627 • Laredo, Texas 78042-0627 • 956/722-2293 • Fax 956/722-8586
♻ Printed on Recycled Paper

HHSC00002354_00025

COMMITTEE ON
EDUCATION AND THE WORKFORCE

RANKING MEMBER, SUBCOMMITTEE ON
HIGHER EDUCATION AND WORKFORCE TRAINING

SUBCOMMITTEE ON HEALTH, EMPLOYMENT,
LABOR AND PENSIONS

COMMITTEE ON FINANCIAL SERVICES

SUBCOMMITTEE ON CAPITAL MARKETS
AND GOVERNMENT SPONSORED ENTERPRISES

SUBCOMMITTEE ON FINANCIAL INSTITUTIONS
AND CONSUMER CREDIT

WASHINGTON OFFICE:
2262 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20915
PHONE: (202) 225-2531
FAX: (202) 225-5680

EDINBURG OFFICE:
2864 WEST TRENTON ROAD
EDINBURG, TX 78539
PHONE: (956) 682-5545
FAX: (956) 682-0141

SEGUIN OFFICE:
100 SOUTH AUSTIN, SUITE 1
SEGUIN, TX 78115
PHONE: (830) 401-0457
FAX: (030) 379-0984

Rep.Hinojosa@mail.house.gov
www.house.gov/hinojosa



*House of Representatives*
*Rubén Hinojosa*
*15th District, Texas*

July 24, 2015

Commissioner Chris Traylor
Texas Health and Human Services Commission
Brown-Heatly Building
4900 N. Lamar Boulevard
Austin, Texas 78751-2316

**RECEIVED**

AUG 03 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Dear Commissioner Traylor:

As the federal representative of the 15th Congressional District of Texas, I write to express concern over the changes to Medicaid payment rates under the Texas General Appropriations Act, Health and Human Services Commission Rider 50 (House Bill 1, 84R). The reimbursement reductions for rehabilitation and therapy services may create additional obstacles for the vulnerable populations in my district.

Both patients and health service providers in the Rio Grande Valley have expressed their concern with this change. The outlined Medicaid reimbursement decreases will add additional financial strains to current occupational, physical, and speech therapists, who may be forced to limit their hours or go out of business as a result. I fear these rate reductions will limit patient access to care.

It is my hope that the State will reconsider the current rate reduction and formulate a fair payment rate, ensuring Texans' access to important rehabilitative services is unaffected.

I thank you for your attention to this matter and appreciate the service the Texas Health and Human Services Commission provides for the people of my Congressional District. If there is anything I can do to assist you in your efforts, please contact my Edinburg District Office at (956) 682-5545.

Sincerely,

Rubén Hinojosa
Member of Congress

This mailing was prepared, published, and mailed at taxpayer expense
PRINTED ON RECYCLED PAPER

HHSC00002354_00084

CAPITOL OFFICE
P.O. Box 12068
Austin, Texas 78711
(512) 463-0103
FAX: (512) 463-1526
Dial 711 for Relay Calls

COMMITTEES:
Transportation, Chair
Finance
Intergovernmental Relations
Natural Resources & Economic Development



## ROBERT L. NICHOLS
### STATE SENATOR

July 28, 2015

**RECEIVED**

JUL 28 2015

**OFFICE OF THE**
**HHS EXECUTIVE COMMISSIONER**

Commissioner Chris Traylor
Executive Commissioner, Health and Human Services Commission
Mail Code-4001, 4th Floor
4900 North Lamar Blvd.
Austin, Texas 78751

Dear Commissioner Traylor:

Congratulations on your recent appointment as Executive Commissioner of the Texas Health and Human Services Commission (HHSC). I know you are committed to maintaining and improving the health and human services system in Texas, and administering its programs in accordance with the highest standards of customer service and accountability for the effective use of funds.

I am writing to share concerns raised by Medicaid providers in Senate District 3 regarding proposed rate cuts for acute care therapy providers, including physical, occupational and speech therapists. While the Legislature directed HHSC to implement Medicaid funding reductions and cost containment strategies (House Bill 1 - General Appropriations Act, 83rd Regular Session – HHSC Rider #50), the effect of the proposed rate reductions, if implemented as scheduled on September 1st, 2015, may have the unintended effect of limiting access to care, particularly in rural areas including Senate District 3.

It is my understanding the basis for the proposed rate reductions stem form an HHSC analysis of a data collected by Texas A&M University. The HHSC analysis, dated February 25, 2015 and entitled, Review of Texas Medicaid Acute Care Therapy Programs, may not fully reflect an equitable comparison of states' Medicaid rates. Furthermore, rules in Title 1, Part 15, Chapter 355 of the Texas Administrative Code limiting the methodology to establish rates makes no reference to consideration of commercial rates. As you know, commercial rates may be affected by additional factors including limits on utilization, coinsurance and copayments.

It is my understanding several stakeholders have met with HHSC to provide alternative strategies to achieve the savings required by law. Please ensure HHSC gives full and due consideration to these proposals, so as to ensure the effect of any rate reduction does not result in a decrease in access to care. Additionally, I ask the agency to work to ensure that any rate cuts do not have a disproportionate share on access to services in rural areas.

JACKSONVILLE OFFICE
329 Neches Street
Jacksonville, Texas 75766
(903) 589-3003
FAX: (903) 589-0210

NACOGDOCHES OFFICE
202 E. Pilar Street, Ste. 309
Nacogdoches, Texas 75961
(936) 564-4252
FAX: (936) 564-4276

LUFKIN OFFICE
2915 Atkinson Drive
Lufkin, Texas 75901
(936) 699-4988
FAX: (936) 699-4991

CONROE OFFICE
15260 Hwy. 105 W., Ste. 230-H, Box 5
Montgomery, Texas 77356
(936) 588-7391
FAX: (936) 588-1713

Senate District 3
E-mail: robert.nichols@senate.state.tx.us

HHSC00002354_00044

Thank you for your consideration, and thank you for your leadership of the Texas Health and Human Services Commission. Please do not hesitate to contact me if I may be of assistance to you and the agency in this or any other matter.

Sincerely,

Robert L. Nichols
State Senator, District 3

RLN/al

HHSC00002354_00045



STATE OF TEXAS
HOUSE OF REPRESENTATIVES
TRENT ASHBY
District 57

July 30, 2015

Mr. Chris Traylor
Health and Human Services Commission
P.O. Box 13247
Austin, TX 78711

**RECEIVED**

AUG 03 2015

OFFICE OF THE
HHS EXECUTIVE COMMISSIONER

Dear Mr. Traylor,

As you know, our Local Mental Health Authorities provide critical services to those in our community who are most in need. In my hometown of Lufkin, we are blessed to have the Burke Center, which I and many others consider to be a shining example of how LMHAs should operate for the betterment of the community. I have recently been in discussion with the Burke Center leadership, and I wanted to share some of my concerns with you regarding Early Childhood Intervention (ECI) and acute care therapy rate reductions.

As HHSC implements the cost saving measures found in Rider 50 of its bill pattern, I would like to encourage you to consider the different obstacles faced by those in our rural communities. In our area of East Texas, we do not have the plethora of providers and options that exist in our urban and suburban communities. Our rural way of life also makes mass transit inefficient and unaffordable, and in many instances those in the greatest need require in home treatment in order to receive services. In short, if the Burke Center is not providing the necessary services, many in East Texas simply would have no other options. Texas is required to provide adequate access to services for Medicaid recipients, and I am concerned the current proposal will affect access, possibly leaving the state out of compliance with federal law.

Due to other funding reductions in DARS bill pattern, the proposed therapy rate cuts would have a disproportionate impact on the Burke Center's ECI program. This program has been extraordinarily successful, and by using nationally recognized assessments, this outcome-based program has yielded exceptional results for our region. As a former school board member, I know the importance of the ECI program and the long term benefits it provides to the children of our state. I fear this funding reduction, coupled with the therapy rate cuts could cripple the ECI program in our region, actually driving up other healthcare and education costs in our community.

I appreciate the hard work you do for Texas, and as a member of the House Appropriations Committee, I also understand the lengths you go to provide the care our citizens need within the confines of a limited budget. As you implement these cost saving measures, I would respectfully request that you do not simply apply a cookie-cutter mold to the entire state.

P.O. Box 2910 • Austin, Texas 78768-2910 • (512)463-0508 • (512)463-5934 FAX
2915 Atkinson • Lufkin, Texas 75901 • (936)634-2762 • (936)634-2764 FAX

HHSC00002354_00081

Each program is unique, and our LMHAs experience distinctive regional and local hurdles as well. Please also consider the impacts of rate cuts across the entire spectrum, and take into consideration compounding effects, such as the situation with the Burke Center's ECI program.

I appreciate your consideration of this request. Should you have any questions regarding this issue, please do not hesitate to contact me or my Chief of Staff, Chris Kirby, at (512) 463-0508.

Sincerely,

Trent Ashby
State Representative

Cc:     Susan Rushing
        CEO, Burke Center

HHSC00002354_00082

MEMBER

APPROPRIATIONS COMMITTEE
  ARTICLE II SUBCOMMITTEE, CHAIR

CALENDARS COMMITTEE

HUMAN SERVICES COMMITTEE

SUNSET ADVISORY COMMISSION
  VICE CHAIR



## FOUR PRICE
### STATE REPRESENTATIVE

CAPITOL OFFICE

P.O. Box 2910
Austin, Texas 78768-2910
www.house.state.tx.us
four.price@house.state.tx.us
(512) 463-0470 Capitol
(800) 374-8787 District

August 10, 2015

Mr. Chris Traylor
Executive Commissioner
Health and Human Services Commission
Attn.: Rate Analysis, Mail Code H-400
Brown-Heatly Building
4900 North Lamar Boulevard
Austin, Texas 78751-2316

Dear Commissioner Traylor,

The recently released and proposed adjusted rates for acute therapy services in Texas, including physical, occupational, and speech therapies, have stakeholders concerned that persons requiring these services will no longer have access to them. Much stress is placed on the requirement for an adequate network, and an expressed fear is that the lower payment fee, as proposed, will reduce the number of service providers.

I am writing to ask that HHSC ensure consideration of all aspects of this proposed adjustment prior to the implementation of any change to the current payment rates/processes. I ask that you equitably look at all regions of the state, including urban, suburban, and rural. Regarding rural areas of the state, I especially ask that your decision regarding rates consider access to therapy services in rural areas. For example, rural areas of the state have the potential of having disproportional fees paid when considering the following: 1) the time/distance it takes a therapist to travel in a rurally underserved area; and 2) the actual time involved in a therapist performing the medically necessary services. Additionally, deference in how the fees are structured should be given in scenarios where a parent/guardian is financially unable to travel to a facility offering therapy services or where it is not in the medical best interest of the patient when considering their own unique medically fragile condition.

I know you are fully aware of the health care access disparities that exist between rural and urban areas of our large state; disparities which I and some of my House colleagues have sought to narrow by ensuring the viability of rural hospitals. I ask that your ultimate decision carefully weighs the needs of the patients living in rural communities and the distances that they, or their providers, have to travel so that medically essential services can be appropriately rendered. Thank you for your attention to this matter.

Sincerely,

Four Price
State Representative

HHSC00006539

# Congress of the United States
## Washington, DC 20515

September 10, 2015

Andrew Slavitt
Acting Administrator Centers for Medicare & Medicaid Services
Department of Health and Human Services
Hubert H. Humphrey Building, Room 445-G
200 Independence Avenue, SW
Washington, DC 20201

Dear Acting Administrator Slavitt:

As you know, there are over four million Medicaid recipients in the State of Texas, including a significant number of children that have an immediate issue facing them that demands urgent attention.

Specifically, we are concerned that the severity of the rate reductions being proposed by the Texas Health and Human Services Commission will have a devastating impact on the ability of children to access medically necessary therapy services.

As background, the first of the rate reductions were scheduled to take effect September 1, 2015 and are now scheduled to be implemented October 1, 2015. Rider 50 (c), H.B. 1, 84th Texas Legislature, directs the Texas Health and Human Services Commission to make $150 million worth of reductions in general revenue over the FY 2016-2017 state biennium to Medicaid acute care therapy services through a combination of rate reductions and policy changes.

It is our understanding that the state will have to submit a State Plan Amendment to the Centers for Medicare and Medicaid Services (CMS) to implement the proposed rate reductions.

We would urge CMS to carefully review any rate reductions to acute care therapy services submitted by the Texas Health and Human Services Commission to ensure that the amount of rate reductions and the methodology being employed by the state to implement rate reductions does not restrict access to medically necessary therapy services, regardless of setting.

Thank you for your prompt attention to this matter.

Sincerely,

Gene Green
Member of Congress

Joaquin Castro
Member of Congress

Eddie Bernice Johnson
Member of Congress

Lloyd Doggett
Member of Congress

Sheila Jackson Lee
Member of Congress

Rubén Hinojosa
Member of Congress

Henry Cuellar
Member of Congress

Al Green
Member of Congress

Beto O'Rourke
Member of Congress

Marc Veasey
Member of Congress

Filemon Vela
Member of Congress



CAPITOL OFFICE:
P.O. BOX 2910
AUSTIN, TEXAS 78768-2910
512-463-0570
FAX: 512-463-0315

# JOHN OTTO
### STATE REPRESENTATIVE
### DISTRICT 18

DISTRICT OFFICE:
P.O. BOX 965
DAYTON, TEXAS 77535
936-258-8135
FAX: 936-258-7190

Executive Commissioner Chris Traylor
Health and Human Services Commission
4900 N. Lamar Blvd.
Austin, Texas 78751

September 10, 2015

Dear Commissioner Traylor:

As you know, the 84th Legislature passed the 2016-2017 General Appropriations Act (HB 1) during the legislative session. HB 1 contains HHSC Rider 50, which instructs the Commission to "reform reimbursement methodology to be in line with industry standards, policies, and utilization for acute care therapy services (including physical, occupational, and speech therapies) *while considering stakeholder input and access to care.*"

The goal of this rider is to ensure taxpayer dollars are used efficiently and providers are reimbursed at a rate similar to the commercial market and Medicaid rates of other states. However, it was never intended to jeopardize access to care for the Texans who depend on these services.

Many House members have reached out to the Commission with their concern, which I share, regarding the access to care issue. Access to care has always been a priority to the Texas House. A discussion on the House floor during the adoption of Conference Committee Report on HB 1 confirms the rider adopted was never intended to impact access to care. Additionally, our participation in the federal Medicaid program provides the state meet certain requirements, and network adequacy as it relates to access to care is a criterion to maintain compliance.

It is my belief the language in Rider 50 gives the Commission the necessary flexibility to achieve certain rate reductions without jeopardizing access to care or compliance with federal law.

Sincerely,

John Otto

Cc: Governor Greg Abbott
Speaker of the House Joe Straus
Members, Texas House of Representatives

Lt. Governor Dan Patrick
Senate Finance Chair Jane Nelson

P.O. BOX 12068
CAPITOL BUILDING
AUSTIN, TEXAS 78711
512/463-0112
FAX: 512/463-0923

DISTRICT OFFICE
1235 S. MAIN STREET, SUITE 280
GRAPEVINE, TEXAS 76051
817/424-3446
FAX: 817/488-6648

E-MAIL: jane.nelson@senate.state.tx.us



## The Senate of the State of Texas

### Jane Nelson
Senate District 12

Committees:

FINANCE, CHAIR
SUNSET ADVISORY COMMISSION, CHAIR
LEGISLATIVE AUDIT COMMITTEE
LEGISLATIVE BUDGET BOARD
STATE AFFAIRS

September 10, 2015

Executive Commissioner Chris Traylor
Health and Human Services Commission
4900 N. Lamar Blvd
Austin, Texas 78751

Dear Commissioner Traylor:

I am writing to reiterate my strong support for the Health and Human Services Commission (HHSC) to follow the Legislature's clear written instructions and intent that adjustments to Medicaid therapy rates proceed in a manner that preserves access to these important services.

Last year, an independent study conducted by researchers at the Texas A&M School of Public Health concluded that Texas Medicaid rates for pediatric acute care therapy services are significantly higher than the Texas commercial rate, commercial rates in other states, and Medicaid rates in other states. This is in addition to research conducted by HHSC that demonstrated similar findings.

As a result, the Legislature included HHSC Rider 50 in the 2016-17 General Appropriations Act, which directs the Commission to reduce Medicaid pediatric acute care therapy rates to a more appropriate level. Rider 50 explicitly states that the Commission should consider access to care when implementing these rate reductions. Furthermore, federal law *requires* that in setting Medicaid rates states must preserve access to care.

We must re-align our rates to prevent taxpayers from being overcharged for these services. However, we need to move forward in a responsible manner that complies with Rider 50 and federal law. I believe, and have communicated to you, that the language in the rider gives the Commission the flexibility to phase-in the rate reduction to prevent any disruption in the delivery of these important services to children across the state.

Very truly yours,

Senator Jane Nelson

CC:     Governor Greg Abbott                          Speaker of the House Joe Straus
        Lieutenant Governor Dan Patrick              House Appropriations Committee Chairman John Otto

**HARVEY KRONBERG'S QUORUM REPORT**
TEXAS POLITICS REPORTING SINCE 1981
PO BOX 8 AUSTIN, TEXAS 78767
VOICE: 512.292.8191
FAX: 512.292.0099
EMAIL: HKRONBERG@QUORUMREPORT.COM

**Close this Page**          **Print this Page**

*September 10, 2015    3:23 PM*

# Speaker Straus puts HHSC on notice: The agency needs to tell lawmakers if cuts will harm access to care for disabled kids

## Straus says it is HHSC's "responsibility to inform the Legislature if the proposed reductions would harm access to care and network adequacy."

Speaker **Joe Straus** on Thursday afternoon posted this statement on Facebook:

"My office has received a number of inquiries regarding proposed Medicaid rate reductions for acute care therapy services. These services are critically important to many Texas families.

The state is required to provide Medicaid recipients with the services for which they are qualified. The state is also committed to making sure that the Medicaid program is managed efficiently and that taxpayer dollars are used wisely.

Earlier this year, the Legislature directed the Health and Human Services Commission to reform the acute care therapy reimbursement methodology to be in line with industry standards, policies and utilization. That realignment calls for a reduction of rates. The Legislature also directed HHSC to get stakeholder input and to consider access to care, which includes network adequacy, as required by federal guidelines, when deciding how to implement those reductions.

The Commission originally proposed reducing therapy rates by $50 million per year for the next two years. My office was in regular contact with the other members of the Legislature, the Commission, and providers of acute therapy services to ensure that sufficient access to services were maintained. HHSC also proposed a modified plan that I viewed as a reasonable compromise. However, before a final proposal could be considered, a court challenge was filed.

That lawsuit has been dismissed, which means the agency will begin the process again by proposing new rates. I expect the Commission to keep us in compliance with federal law as it works through a new proposal. I also believe it is the agency's responsibility to inform the Legislature if the proposed reductions would harm access to care and network adequacy.

I will continue to monitor this issue closely as HHSC considers how best to implement these reductions. It is important to me and many of my House colleagues that HHSC implement these rate changes in a way that does not harm access to care."

By Scott Braddock

*IID 24282*

© Copyright September 10, 2015, Harvey Kronberg, www.quorumreport.com, All rights are reserved



# The Senate of The State of Texas

## Senator Craig Estes
District 30

September 14, 2015

Commissioner Chris Traylor
Executive Commissioner, Health and Human Services Commission
Mail Code-4001, 4th Floor
4900 North Lamar Blvd.
Austin, TX 78751

Dear Commissioner Traylor,

Medicaid providers in my district have alerted me to serious concerns that will result from proposed rate cuts for acute care therapy providers, including physical, occupational and speech therapists. It is my understanding that the Legislature directed Health and Human Services Commission to implement Medicaid funding reductions and cost containment strategies in HHSC Rider #50. I have learned the effect of the proposed rate reductions, if implemented as scheduled, may unintentionally limit access to care, particularly in rural areas.

Rider #50 was meant to safeguard taxpayer dollars by directing those dollars be used efficiently and providers be reimbursed at a rate similar to the commercial market and Medicaid rates of other states. As you know, commercial rates may be affected by additional factors including limits on utilization, coinsurance and copayments.

Please ensure HHSC gives full and due consideration to stakeholder proposals that have met with HHSC to provide alternative strategies to achieve the savings required while ensuring that any rate cuts do not have a disproportionate share on access to services for the Texans who depend on these services in rural areas.

I appreciate your consideration and thank you for your leadership of the Texas Health and Human Services Commission. As always, please feel free to contact me if I may ever assist you in any way.

Respectfully,

Craig Estes

CAPITOL OFFICE:
P.O. Box 12068
Austin, Texas 78711
512-463-0130
FAX: 512-463-8874
Dial 711 for Relay Calls

DENTON DISTRICT OFFICE:
4401 North I-35, Suite 202
Denton, Texas 76207
940-898-0331
Fax: 940-898-0926

SHERMAN DISTRICT OFFICE:
1117 Gallagher, Suite 340
Sherman, Texas 75090
903-868-2347
Fax: 903-868-9666

WICHITA FALLS DISTRICT OFFICE:
2525 Kell Blvd., Suite 302
Wichita Falls, Texas 76308
940-689-0191
Fax: 940-689-0194